
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 873 | **DATE** | 5/24/2002 |
| **CASE TITLE** | Compuware Corp. vs. Health Care Service Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions for summary judgment (37-1 and 48-1) are granted in part and denied in part. Summary judgment is granted as to count I and count III, and on the section 106 (a)(1) and (3) claims under count II. The motion is denied as to section 106 (a)(2) claims under Count II. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 8 2002 | |
| | Notified counsel by telephone. | | date docketed | 110 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 5/24/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |


DOCKETED
MAY 28 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **COMPUWARE CORPORATION**, a Michigan Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**HEALTH CARE SERVICE CORPORATION**, a mutual legal reserve company doing business as **BLUE CROSS BLUE SHIELD OF ILLINOIS; UNITECH SYSTEMS, INC**, an Illinois corporation, and various **JOHN DOES**,<br><br>Defendants. | No. 01 C 0873 |

## MEMORANDUM OPINION AND ORDER

Compuware Corporation of Michigan sells software to run on mainframe computers. It entered into a permanent license agreement (governed by Michigan law) with Health Care Service Corporation of Illinois ("HCSC") in 1984, but retained ownership in certain software licensed to HCSC. The agreement was amended in 1993 to state that the licensed software may be used only by HCSC and only at the licensed locations. The 1984 license was further amended by twenty five Software Product Schedules entered into between 1984 and 2000, identifying the particular software at issue and the locations to which it was licensed. In 1997, Compuware salesmen looking into whether Unitech Systems, Inc., might be a potential customer, discovered that Unitech was running Compuware software

licensed to HCSC. In February 2000, Compuware found that HCSC had been selling Unitech the use of certain Compuserve software since 1984, and that Unitech had been developing its own line of software that Compuware believed was based on the Compuware software. Compuware sued HCSC for breach of contract (count I), Compuserve, Unitech, and "John Does" for copyright infringement (count II), as well as for misappropriation of trade secrets (count III). The defendants move for summary judgment, and I grant the motion in part and deny it in part.

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

HCSC argues that all of Compuware's claims are time-barred and should be dismissed because the original 1984 agreement requires that "no action arising out of this Agreement, regardless of form, may be brought by either party more than one year after the cause of action has accrued." According to HCSC, Compuware knew or should have known in 1997 that Unitech was using the licensed software on the HCSC system, but it did not sue until February 2001, well after

the one year limitations period in the contract. HCSC offers a statement by Compuware's Rule 30(b)(6) corporate designee, Sean O'Shea, agreeing that "Unitech told Compuware that it was using the . . . software on the [HCSC] computer in 1997," and that there were no license agreements between Compuware and HCSC. HCSC also offers notes made in the summer of 1997 from Bill Seno, Dan Schufrieder, and Guy Gross, Compuware salesman who were feeling out Unitech as a potential customer, indicating that Unitech was running the licensed software. Compuware replies that this is true, but says it thought that Compuware was merely acting as a consultant to HCSC, and that what Compuware did not know prior to February 2000 was that Unitech was working with Compuware software to develop its own products.

That admission takes out the contract claim and (as I shall explain below) the trade secrets claim as well. Michigan, whose law governs here, uses a plain language rule in interpreting contracts. *Gelman Sciences, Inc. v. Fidelity and Cas. Co. of New York,* 572 N.W.2d 617, 623 (Mich. 1998) ("[W]e must enforce the terms of the contract as written, interpreting the unambiguous language in its plain and easily understood sense."). The license provides that the licensed software "may be used only by the customer," that is, by HCSC, which shall "maintain the confidential nature of the software." It does not say that HCSC may allow anyone else to use it or disclose the confidential aspects of it, presumably its

3

architecture and code, to anyone else. It does not say, *e.g.,* "Customer may allow its consultants to use the software as long as the consultants do not use the software to develop their own products." It says that only the customer may use it, and that the customer must keep the software confidential.

The undisputed facts show that Compuware knew in 1997 that Unitech was using the licensed software and therefore that HCSC was not maintaining its confidential nature. That is, Compuware knew in 1997 that HCSC was violating the terms of the agreement, but it did nothing until 2000, when it became aware that Unitech was using the licensed software for developing its own software. Compuware introduces evidence that consulting companies in the business use licensed software all the time, but in the face of exclusive licenses, that just suggests that violations of exclusivity and confidentiality clauses are commonplace. If there are to be exceptions for consultants, they must be expressly stated in the language of the contracts, or the licenses must be otherwise so formulated as to conform to the practice of using consultants. Compuware does not argue that the contract was amended by conduct of the parties or course of dealing, so any such argument is waived. I note that the agreement was amended many times, and had Compuware wished to authorize the use of its software for particular purposes by consultants, it might have specifically done so in writing, and limited external use to those purposes, when it

4

became aware of Unitech's use of the software in 1997. *See Dawn Equipment Co. v. Micro-Trak Systems, Inc.*, 186 F.3d 981, 988 (7th Cir. 1999) ("Had the parties wished to [include a certain contractual provision], they had ample opportunity to do so in the written agreement.").

Compuware invokes Michigan's "continuing breach of contract" doctrine, citing *Adams v. City of Detroit,* 591 N.W.2d 67, 71 (Mich. App. Ct. 1998), which directed the trial court to treat the denied benefits in that case as like "installment contracts, each deficient payment of benefits marking the time from which a separate claim accrues," for the purposes of the statute of limitations. However, the case is disanalogous. The present case involves not an installment contract but a one-time license agreement with subsequent amendments. Compuware argues, alternatively, that the Project Schedules "incorporate and are governed by the terms of the license agreement, but each represents a new contract for the software products identified therein." That would exclude the Project Schedules signed before February 7, 2000, but permit those signed afterwards. However, Compuware offers no argument that the Project Schedules are indeed separate contracts as opposed to amendments, and I conclude that they are not. The contract claim is barred.

The copyright claim is a different story. As Compuware urges, this does not "arise out of" the license agreement and so is not

barred by the contractual limitations period. As the Seventh Circuit has stated, "arising out of" and "arising under" are familiar phrases. *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994). If the resolution of the dispute "depend[s] on an understanding of the parties' written bargain and of its implied terms," *id.*, then it "arises out of" that agreement. All disputes "the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement for purposes of an arbitration clause." *Id.* Compuware's argument that this reasoning only applies to arbitration cases is unpersuasive. It is the "arises out of" language that is key.

The copyright infringement claim arises purely under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and does not depend on the license agreements, which are not required for the interpretation of that claim. The Copyright Act provides in pertinent part that the copyright owner has the exclusive right:

> (1) to reproduce the copyrighted work in copies or phonorecords
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

17 U.S.C. § 106(a). Understanding these rights does not require interpretation of the license agreement. A rational jury could conclude that there is enough evidence of Unitech's unauthorized use of the software to find violations of § 106(a)(1) & (3) by at

least Unitech and of Unitech's preparation of derivative works to find violations of § 106(a)(2). HCSC has a license to use the software.

However, the statute of limitations on copyright infringement is three years. *Pickett v. Prince*, 207 F.3d 402, 404 (7th Cir. 2000); 17 U.S.C. § 507(b). Compuware became aware from some time in the summer of 1997 that HCSC was allowing Unitech to use the licensed software. The clock started running then on the filing of a lawsuit for possible violations of § 106(a)(1) and (3), and the limitations period ended three years later, in the summer of 2000. This lawsuit was not filed until February 2001, so those claims are barred.

There remains the claim for the violation of § 106(a)(2), for the preparation of derivative works based on Unitech's use of the licensed software to develop its own products. Compuware introduces evidence that it did not know until February 2000 that Unitech was using its access to Compuware software for this purpose. HCSC replies with evidence that Compuware learned about this in 1997, referring to Sales Exception Forms from that year that call Unitech "a developer of software." By itself that would not be enough to conclude that Unitech was developing software based on Compuware's proprietary products. HCSC refers me, further, to Gross's deposition to show that Compuware knew from this that Unitech was in fact using Compuware software as the basis of its own work, but

7

the cited testimony does not support this reading. *See* HCSC's L.R. 56.1(a) Statement, Tab 12 at 109-112. Neither is there any evidence from which a rational jury could conclude that Compuware should have found this use of its software any sooner. No evidence in the record indicates that the § 106(a)(2) claim is time-barred.

Unitech further argues that the copyright claim is barred by laches. Laches is an equitable doctrine, also available at law, that "addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). The party asserting the defense of laches must demonstrate: "(1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom." *Id.* The § 106(a)(2) claim is timely, but laches can be used to contract a statute of limitations. *Hutchinson v. Spanierman*, 190 F.3d 815, 823 (7th Cir. 1999). Unitech's argument for unreasonable delay is that in 1997-1999, Compuware did not investigate whether Unitech's use of its software was authorized. However, this only goes to the § 106(a)(1) and (3) claims, which are time-barred anyway. It does not reach the § 106(a)(2) claim. Unitech does not argue that Compuware should have known before 2000 that Unitech was using Compuware's software as the basis for its own programs. There was no unreasonable delay between finding out in February 2000 that Unitech was using Compuware products to develop its own, and suing

in February 2001. Moreover, Unitech does not plausibly argue that it was prejudiced. It cites no authority that having to pay damages by itself constitutes prejudice, arguing only that "all of these costs and expenses"--apparently referring to damages--could have been avoided had Compuware acted sooner. However, there is no evidence that this is true. Here, if Compuware's claim that it stopped using Compuware software in March 2000, on receiving Compuware's demand letter, is true, the delay did not cost it any additional damages. If Unitech continued to violate Compuware's copyrights, it is hardly entitled to the advantages of an equitable doctrine, which, like all equity, requires clean hands. *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998). Laches does not apply.

The trade secrets claim is based on the Illinois Trade Secrets Act, 765 ILCS 1065/2(d) ("ITSA"), which has a five year statute of limitations, *id.* § 1065/7. The trade secrets claim depends on a construction of the parties' written bargains, specifically the nondisclosure provisions, to determine what measures Compuserve took to maintain the confidentiality of the software, so the claim "arises under" the agreement. Compuware argues that nonetheless the shorter contractual limitations period is ineffective because the longer statutory ITSA period controls. "[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action

9

on such contract to a period less than that prescribed in the general statute of limitations . . . . " *Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1204 (7th Cir. 1992) (quoting *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)). That is correct, so the ITSA claim is not time-barred.

The ITSA fails in any event, however, because HCSC and Unitech have brought forward undisputed evidence that Compuware failed to preserve the confidentiality of the licensed software. ITSA protects certain commercial information that:

> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

*Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 617 (Ill. App. Ct. 1998) (quoting 765 ILCS 1065/2). Here, it is undisputed that Compuware knew that HCSC allowed Unitech to use the licensed software, and Compuware did not do anything about it until it discovered that Unitech was using it for a purpose of which Compuware disapproved. The sole evidence of efforts to maintain confidentiality offered by Compuware is that employees, customers, and prospective customers were required to sign nondisclosure agreements. *See* Response to Unitech's Motion for Summary Judgment, at 8-11. The undisputed evidence shows that these were not enforced. It doesn't matter what Unitech was using the licensed

software for, however, for the purposes of this claim; all that matters is that Compuware knew that HCSC had violated its confidentiality agreement by permitting Unitech to use the software, and took no steps to stop this. As a matter of law doing nothing to enforce a confidentiality agreement is not a reasonable effort in the circumstances to maintain a trade secret. The defendants are entitled to summary judgment on the ITSA count.

I GRANT the defendants summary judgment on count I (the contract claim) and count III (the ITSA claim), and on the § 106(a)(1) and (3) claims under Count II (the copyright claim). I DENY summary judgment on the § 106(a)(2) claims under count II.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: May 24, 2002